**CV 12 5771**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
MOHAMED ALSAIDI,

                Plaintiff,

- against -

THE CITY OF NEW YORK, NEW YORK CITY
POICE DEPARTMENT, POLICE
SERGEANT "JOHN" MUEA, POLICE OFFICER
"JOHN" COOPER (badge # 1888), POLICE
OFFICER "JOHN" BROOKS (tax # 903493)
"JOHN DOES" and "JANE DOES" said
names being fictitious, their true
names and identities unknown, intended
to describe and identify arresting
police officers employed and acting on
behalf of the New York City Police
Department

                Defendants.
----------------------------------x

CIVIL ACTION:

TOWNES, J.

COMPLAINT SCANLON, M.J.

Jury Trial Demanded

1. Plaintiff, MOHAMED ALSAIDI, by his attorney, Robert H. Parker, complains of the Defendants and respectfully sets forth to this Court as follows:

**PRELIMINARY STATEMENT**

2. This action is brought pursuant to the provisions of 42.U.S.C.§1983, and, pursuant to claims for, illegal seizure and imprisonment, harassment, intentional infliction of emotional distress, humiliation, racial discrimination and the violation of civil rights. The action arises out of the false arrest and false imprisonment of the Plaintiff by defendant Police Officers employed by the New York City Police Department.

**JURY TRIAL DEMANDED**

3. Plaintiff demands trial by jury in this action.

**JURISDICTION AND VENUE**

4. This action arises under the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution, under 42 U.S.C. §§1983 and 1988 and related State Law.

5. The jurisdiction of this Court is predicated upon 23 U.S.C. §1331 and §1343(a)(3) and (4), and upon pendent jurisdiction.

6. Venue lies in this district pursuant to 28 U.S.C. §1391(b).

**THE PARTIES**

7. The Plaintiff was and still is a resident of Richmond County, City and State of New York.

8. Upon information and belief, and at all times hereinafter mentioned, the Defendant, City of New York, (hereinafter referred to as "CITY") was and still is a municipal corporation and body politic, organized and existing under the Laws of the State of New York and the Charter of the City of New York.

9. Upon information and belief, and at all times hereinafter mentioned, and on or about April 23, 2010, the Defendant CITY, by virtue of, under and pursuant to the Laws of

the State of New York, and the Charter, and Administrative Code of the City of New York, created and operated The New York City Police Department (hereinafter "NYCPD") for the public benefit and protection of its citizens.

10. Defendants SGT "JOHN" MUEA (hereinafter "MUEA"), "JOHN" BROOKS, and "JOHN" COOPER and all police officers involved in the arrest of the Plaintiff were New York City Police officers employed by defendant New York City and based out of the 84 precinct in Brooklyn New York.

11. At all times relevant hereto, all of the above mentioned Police Officers in the prior paragraph were acting under color of State Law and within the scope of his employment.

## **THE FACTS**

12. On April 23, 2010, in the county of Kings, City and State of New York, defendant police officers lacked probable cause or articulable suspicion to arrest, search and imprison Plaintiff ALSAIDI.

13. Plaintiff ALSAIDI is a United States citizen, male and of Muslim faith and of Yemenese ancestry. He also speaks with a middle eastern accent.

14. On or about April 23, 2010, ALSAIDI was gainfully employed as a teacher at New York University, and tax preparer.

15. At approximately 6pm, ALSAIDI was traveling home from work and operating a motor vehicle. He drove past 133 Lawrence street in Brooklyn and noticed that there were security officers standing next to his cousin's convenience store.

16. ALSAIDI parked his car and approached and learned that the security officers were actually securing a store next door to his cousin's store. The store had been raided earlier by police and the store was wrecked. There was a non English speaking patron in the store who was prevented from leaving.

17. Relatives of the owner of the secured store had arrived and asked ALSAIDI to ask the security guards if they could start cleaning up and explain that the patron who was trapped in the store had nothing to do with the store. The relatives did not

speak English very well and believed that ALSAIDI was a better communicator.

18. ALSAIDI approached the security officers and explained the concerns of the store owner's relatives.

19. ALSAIDI specifically asked the security officer the length of time that they were staying at the location and that the relatives were concerned about looters, and that they wanted to know who to hold responsible if items were stolen from the store.

20. The security officer ridiculed ALSAIDI, stating in sum and substance, "OH I'M SCARED" and "MY LEGS ARE SHAKING."

21. At no time on April 23, 2010, did ALSAIDI enter the secured location.

22. Approximately 7pm New York City police officers arrive to the location and asked ALSAIDI for identification.

23. ALSAIDI began to discuss with the officer the store owner's relatives concerns. Defendant MUEA was present and stated to ALSAIDI in sum and substance, "YOU TALK TOO MUCH!"

24. While the security officers were standing there in full view of the plaintiff and the defendants, ALSAIDI was arrested and charged with BURGLARY IN THIRD DEGREE (PL 140.20), even though no one told the officers that ALSAIDI had entered the store or committed any crimes.

25. Police Officers BROOKS and COOPER participated in the arrest. Officer BROOKS placed handcuffs on ALSAIDI, despite his

5

protests that he was only an interpreter and had nothing to do with the store incident.

26. ALSAIDI was transported to the 84th pct in Brooklyn where he was fingerprinted and processed.

27. Even though, the underlying alleged crime charged was Burglary, the New York City police department unjustifiably notified the Federal Bureau of Investigation (aka "FBI").

28. For nearly eight hours straight, the FBI interrogated ALSAIDI about his relatives and anything he knew about terrorist activities.

29. ALSAIDI, having heard stories about American Muslims who disappear and are detained by the government, began to become extremely nervous and concerned that he would never see his family again.

30. After this interrogation, ALSAIDI was transported to Central Booking in Brooklyn.

31. After ALSAIDI's arrest, NYPD made it extremely difficult to get back ALSAIDI's personal property for no good reason.

32. Because the plaintiff is Muslim and because of emotions surrounding the 911 terrorist attacks, plaintiff was wrongfully targeted by NYPD, arrested solely for the purpose of being interrogated by the FBI and nothing else.

33. All charges against ALSAIDI were dismissed.

## COUNT ONE

34.     As a direct and proximate result of Defendant police officers' constitutionally offensive conduct in the preceding paragraphs, Plaintiff was caused to be brutally arrested, falsely imprisoned and accused, and malicious interrogated for no good reason, other than being Muslim.

35.     For intentional infliction of emotional distress, humiliation, embarrassment, shame, and the mental anguish of being detained and subject to a lengthy interrogation, including, but not limited to having to come back and forth to court numerous times to obtain his personal property, Plaintiff seeks compensatory damages, and punitive damages in the amount of one million dollars.

## COUNT TWO

36. Plaintiff repeats and realleges the foregoing paragraphs "1" through "35", inclusive, as if they are fully set forth herein at length.

37. The Defendant Police Officers, by having unlawfully and illegally detained and forcibly shackled the Plaintiff without probable cause, and to maliciously interrogate him, deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States of America, all of which was in violation of 42 U.S.C.§1983. The rights of the Plaintiff, as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution, and related New York State Law have been violated.

38. The Defendants acted under pretense and color of the State Law and in their individual official capacities. The acts of the Defendants were without authority of law and constituted a severe abuse of their powers. Defendants acted intentionally, willfully, knowingly and with the specific intent to deprive Plaintiff of her constitutional rights as secured by 42 U.S.C.§1983, and by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution and related New York State Law.

39. As a direct and proximate result of the misconduct of the Defendants as afore described, and the wrongful acts and abuses of authority as detailed above, Plaintiff sustained the damages hereinbefore alleged.

40. Based upon the allegations as set forth herein, Defendants violated Plaintiff's civil rights to be free from false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

41. Plaintiff seeks damages in the sum of One Million Dollars and exemplary damages of Five Million Dollars.

## COUNT THREE

42. Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through 41" inclusive as if the same were fully set forth at length herein.

43. Upon information and belief, the Defendants have engaged in a long standing and pervasive pattern of constitutionally offensive conduct, including the knowing harassment and prosecution of individuals, without probable cause or authority, and the repeated use of excessive force and abuse, and the failure to conduct even rudimentary investigations, in purportedly performing their duties as employees of the Defendant City.

44. Upon information and belief, the Defendants have engaged in a long pattern of constitutionally offensive conduct, in failing to properly train, supervise, and discipline police officers in proper enforcement of motor vehicle stops.

45. Upon information and belief and prior to the acts complained of herein, the Defendants City of New York and The New York City Police Department, through supervisory personnel, had knowledge and notice of this pattern of unconstitutional conduct by the individual Defendants, but knowingly failed to

take any remedial steps to train, supervise or discipline the individual Defendants to prevent the type of conduct to which they subjected the Plaintiff.

46. Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants City of New York and/or the New York City Police Department employees and representatives, and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the individual Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

47. By reason of the foregoing, the Defendant, the City of New York and its Police Department have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of 42 U.S.C. §1983, and have deprived Plaintiff of his rights as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution and related New York State Law.

48. As a direct and proximate result of the official

policy, practice and custom of the Defendant City of New York and its Police Department as alleged herein, Plaintiff sustained damages herein before alleged.

49. Based upon the allegations as set forth herein, the Defendants have violated the Plaintiff's rights to be free from false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

50. Plaintiff seeks compensatory damages in the sum of ONE Million Dollars and exemplary damages of an additional Five Million Dollars.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a) On each Count in such sums as may be determined upon the trial of this action, including, but not limited to general damages, special damages and punitive damages, One Million Dollars compensatory damages and Five Million Dollars exemplary damages;

b) Punitive Damages as to Defendant MUEA, BROOKS and COOPER and CITY for intentional conduct as described above.

c) For reasonable attorney's fees pursuant to 42 U.S.C. §1988, together with costs and disbursements; and

d) For such other and further relief as this Court may deem just and proper.

Dated:   November 21, 2012

> Robert H. Parker, Jr.
> Attorney for Plaintiff
>
> By: _____
> Robert H. Parker (RP-1682)
> 6008 8th Avenue
> Brooklyn, New York 11220
> (646) 280-8411
> (718) 228-4156 fax.